20597, 20598.   TABER MILL *v.* SOUTHERN BRIGHTON
MILLS; and *vice versa.*

Decided July 15, 1930.

*Maddox, Matthews & Owens,* for plaintiff in error.
*Barry Wright,* contra.

LUKE, J.  Southern Brighton Mills, a corporation, caused an attachment to be issued against Taber Mill, a corporation.  This attachment was levied, and the plaintiff filed its declaration in attachment.  Taber Mill demurred to the declaration, and, after the same had been amended several times, the court overruled all the demurrers.  The defendant filed exceptions pendente lite to the overruling of its demurrers.  In its answer Taber Mill denied all liability, and sought to recover the full purchase-price of the yarn sold by it to plaintiff.  Taber Mill filed a motion for a new trial, based upon the usual general grounds and several special grounds complaining of the charge of the court and rulings on the evidence.  By a cross-bill of exceptions Southern Brighton Mills complains of the verdict and of rulings and the charge of the court.

Omitting some of the formal parts and unnecessary details of the declaration in attachment, it may be summarized by paragraph as follows:

"5.  On October 25, 1928, plaintiff gave defendant an order, which was duly accepted by defendant, for 190,000 pounds of certain yarn for certain deliveries, on certain terms, as will be shown by copy order and acceptance hereto attached, marked 'Exhibit A,' as part of this declaration.

"6.  On or about November 21, 1928, the first car arrived at delivery point.  Such yarn was very irregular, and failed to comply with the specifications, and was materially different.  The plaintiff promptly notified defendant and its selling agent.

"7. On November 23, 1928, the second car arrived at the mill of plaintiff, and the same was materially below specifications. Defendant and its selling agent were promptly notified.

"8. Plaintiff rejected the first two shipments, and so notified defendant through its selling agent, "J. M. Prendergast Company, by notifying F. W. Connor, agent in charge of said company, on November 28, 1928. "Said rejection was made because said yarn did not come up to contract requirement on the test named, and was so deficient that it was not fit for use by plaintiff. At the same time offer was made by plaintiff to refer the dispute to the United States Testing Laboratory and let its decision control. Such laboratory is recognized as a high-class, standard concern on making such tests.

"9. All shipments of about 180 beams were tested and found deficient and rejected, and plaintiff was forced to go into the open market and buy other yarn at an advance of one cent per pound, or $1,900, such advance representing the fair market price of 37 cents per pound for 190,000, as against 36 cents on contract with defendant. Plaintiff shipped to defendant, to facilitate delivery, 170 beams to wind the yarn on, on October 29, 1928, and 44 beams on November 5, 1928. On February 9, 1929, defendant returned 22 beams, leaving defendant due plaintiff 192 beams of the value of $10 each, or $1920. On January 31, 1929, plaintiff paid freight on four beams of yarn from Shannon, Ga., to Allwood, N. J., amounting to $19.07, which defendant had agreed to pay, but which it had not paid, and on February 16, 1929, paid freight on the 22 beams returned by defendant to plaintiff, amounting to $20.56, which should have been paid by defendant.

"10. Defendant is, therefore, justly due plaintiff $3,859.63 for the foregoing items and legal interest."

The contract, or order, referred to in paragraph 5 of the declaration was for "190,000 lbs. of 22.60 I karded Peeler White Stock cotton yarn turns twist per inch." The yarn was to be "of same quality as that furnished on Brighton Mill contract 3575; yarn to be spun 22.60/1, and true to number. Price $.36 per lb. calculated weight of yards, f. o. b. Shannon, Ga." The following is the only reference in the contract to the tensile strength of the yarn: "Yarn to test not less than ——— lbs. for standard 120 reeling."

Those parts of the first amendment to the declaration, bearing

upon the main question presented by the demurrer, may be summarized as follows:

1. Said order was accepted by John Sullivan, the duly authorized agent of defendant.

2. "While the requirements in said contract with respect to the test of said yarn appear blank, said order provided that the yarn therein ordered should be of the same quality as that furnished on Brighton Mill contract No. 3575," a copy of which is attached.

3. "The defect in said yarn, as set forth in the sixth and seventh paragraphs of the petition, consisted in the fact that said yarn, when the same was delivered  .  . , upon test, broke at a test of 75 pounds average, the same being 20's; the high thereof being 82 pounds, and the low thereof being 64 pounds, said test being upon the first car of said yarn delivered; and upon the second car the test showed 71 pounds at which said yarn broke as an average.

4. "Said yarn was being used in the manufacture of fabric and cords for automobile tires, and for said reason the breaking test of said yarn was absolutely vital to the plaintiff as to the quality of said yarn, and said yarn was therefore totally unsuited for the purpose for which it was intended."

5. Plaintiff notified defendant of the defect in the first car of yarn on November 21, 1928, and of the defect in the second car on November 26, 1928.

6. "Defendant withheld further shipments of said yarn until Nov. 28, 1928, when petitioner wrote said defendant, through J. M. Prendergast & Company, their selling agent;" a copy of said letter being attached as an exhibit.

7. "Petitioner shows that  .  . on November 27, 1928, your petitioner received an additional shipment, on account of said contract, from Taber Mill, and that a test thereon showed a break of 73 pounds  .  . of 36 beams received on said date, and a break of 72  .  . of 31 beams  .  . , and a break of 73 pounds upon the shipment received on November 22, 1928; and that thereafter a further shipment was received  .  . on December 5, 1928, which showed a breaking strength of only 73.5 pounds, which said fact was immediately reported to the said Taber Mill through its agent, J. M. Prendergast Company.

8. "Petitioner amends the ninth paragraph of its original petition by alleging that the yarn purchased by it was of the same kind

and character and specification as was contracted to be purchased by it in said original contract. . . , and that said yarn was purchased by it in the open market at the market price of said yarn at said date of said purchase."

9. Said beams referred to in the ninth paragraph of the original petition were furnished at defendant's request, made through its selling agent, "for the purpose of winding said yarn purchased under said contract thereon for delivery to petitioner; and said beams had a reasonable market value of $10 each."

10 and 11. These paragraphs set out more fully the facts upon which freight was claimed in paragraph 9 of the original declaration.

The second amendment to the declaration is as follows: "Plaintiff further shows to the court that the words in the original contract referring to the quality of the yarn had reference, under the general terms used in the business of cotton and yarn, to the tensile strength of said yarn, and that said expression is a trade term common to said business and generally used therein, and includes and refers to the tensile strength of the yarn."

Briefly stated, the third amendment to the declaration is as follows:

1. On January 26, 1929, plaintiff demanded the beams referred to in the original declaration, and the demand was refused.

2. Plaintiff purchased yarn in the open market as alleged, after it had inspected the yarn contracted for and rejected it.

3. When said yarn was ordered defendant knew that it was to be used in the manufacture of automobile tires, and that the yarn shipped was unsuited for that purpose.

The "Brighton Mills order No. 3575," referred to in the "Southern Brighton Mills order," is for "150,000 lbs. of 20's or 23's Karded Peeler White Cotton Yarn. . . Yarn to test not less than 20's—100# lbs. for standard 120 reeling, 23's—85# lbs. This contract provides also that "this contract is subject to approval of five sample beams to be made up and shipped at once, . . yarn to be equal to samples submitted June 1, but to be cleaner, . . price 20's at 36 cents per lb., calculated weight of yarns, f. o. b., Allwood, N. J., with privilege of specifying 23's at 37 cents."

One of the grounds of the demurrer to the declaration is as follows: "that the contract as made between the parties in this case

having no provision as to the tensile or breaking strength of the yarn, and the only alleged deficiency in the yarn being in the tensile strength thereof, the declaration sets forth no cause of action against this defendant on that account."

It is perfectly apparent from the declaration as amended that the alleged defect in the yarn was in its lack of tensile strength. The original contract reads: "Yarn to test not less than ———— lbs. for standard 120 yard reeling." Clearly this contract sets out no required tensile strength. It does, however, contain this clause: "Yarn to be of same quality as that furnished on Brighton Mill contract 3575; yarn to be spun 22.60/1, and true to number." The declaration alleged that "quality" included "tensile strength." Let us then look to contract 3575. It contains this provision: "Yarn to test not less than 20s—100 lbs. for standard 120 reeling; 23s— 85 lbs." It thus appears that the contract referred to does not fix any measure of tensile strength for yarn of the size contracted for by the plaintiff. Was the tensile strength of 22.60 yarn to be the same as the 20s or the same as the 23s mentioned in contract 3575? The question can not be satisfactorily answered from anything appearing in the contract. In these circumstances, we do not think that in the contract there was anything fixing any required tensile strength for the yarn in question, and we hold that the demurrer was good so far as it questioned the right of recovery because of the alleged want of tensile strength in the yarn. We further hold that the declaration as amended, in so far as it sought to recover for beams and freight, was good as against the demurrer. We hold also that the demurrer should have been sustained in so far as it attacked the allegation of the declaration in regard to submitting the controversy to the United States Testing Laboratory for adjustment.

*Judgment reversed on the main bill of exceptions; cross-bill dismissed. Broyles, C. J., and Bloodworth, J., concur.*